423 So.2d 567 (1982)
Vinnie CORNELIUS, Appellant,
v.
SUNSET GOLF COURSE and Aetna Life and Casualty and Cosmopolitan Mutual Insurance Company, Appellees.
No. ZZ-381.
District Court of Appeal of Florida, First District.
December 17, 1982.
*568 Brian S. Henry, of Atkinson, Golden, Bacen & Dinner, Hollywood, for appellant.
R. Fred Lewis, of Magill, Reid, Kuvin & Lewis, Miami, for appellees.
SHIVERS, Judge.
Cornelius appeals the final order of the deputy commissioner which denies appellant workers' compensation. We agree with appellant that the deputy commissioner erred in allowing Cornelius, an incompetent, to conduct the final hearing pro se. We therefore reverse and remand for a new hearing.
Cornelius, claimant below, began working part-time at Sunset Golf Course in 1968 as a greenskeeper's assistant. Cornelius' duties included spraying various insecticides and fungicides. Sometime in the summer of 1977 Cornelius was spraying diquat, a strong weed killer, when the nozzle leading from the compressor tank to the hose became clogged. As Cornelius attempted to unclog the nozzle, the spout broke off causing a large quantity of the diquat to be sprayed directly into his face, including his nose and mouth. Although the claimant did not see a physician at that time, he became very frightened, fearing that he would have problems resulting from the exposure.
In the fall of 1977, Cornelius began experiencing both physical and mental problems. He complained of itching, swelling, rash about his body, hair loss, sleep disturbance, and various allergies. In February of 1978 claimant was admitted to Memorial Hospital in Hollywood for psychiatric care and treatment. At that time, claimant was seen by Dr. Akomer who diagnosed Cornelius as a paranoid schizophrenic. Cornelius left the hospital after two days, against medical advice, and returned to work at Sunset Golf Course. In October 1978, he ceased employment at the golf course due to mental and physical problems. In December 1978, Cornelius began work at a dog track and continued work there until he was hospitalized in March of 1979, at which time he was again diagnosed as schizophrenic. During this entire period of time Cornelius was being treated by Dr. Botknecht for his allergies. Dr. Botknecht, noticing claimant's mental problems, eventually referred him to Dr. Howard Israel, a psychologist.
In January of 1979, Cornelius filed a workers' compensation claim. At that time he was represented by an attorney, Emil Jaczynski. In June of 1979, Cornelius was seen by Dr. David Taubel, a psychiatrist. Dr. Taubel also diagnosed Cornelius as a paranoid schizophrenic. Although Dr. Israel, the psychologist, believed that Cornelius' psychological problems were attributable to the traumatic effects of the diquat spraying incident in 1977, Dr. Taubel, the psychiatrist, believed that heredity was the cause of claimant's disease. Dr. Taubel had previously treated Cornelius' brother who also was diagnosed as a paranoid schizophrenic.
In November of 1979, claimant's attorney was permitted to withdraw by the deputy commissioner. A hearing on the merits of the case was set for April 7, 1980, but one carrier, Cosmopolitan, moved the *569 deputy commissioner for an order finding the claimant mentally incompetent. On March 27, 1980, the deputy commissioner entered his order declaring Cornelius mentally incompetent and appointing his mother, Florene Cornelius, to act as his guardian.[1] At the hearing on April 7, 1980, Cornelius and his mother appeared as did lawyers for the two insurance carriers involved. Although Cornelius desired the services of an attorney, he was unable to find a lawyer to take his case. The deputy commissioner offered to continue the case in order to enable Cornelius to obtain an attorney, but Cornelius indicated that he wanted to go ahead and get the hearing over with. At the suggestion of opposing counsel, the deputy commissioner also inquired of claimant's "guardian" if she were prepared to proceed. When she replied in the affirmative, the deputy commissioner allowed Cornelius to proceed pro se. Following the hearing the deputy commissioner entered the order appealed from which found that claimant's diseases were not related to any incident of chemical exposure during his employment at Sunset Golf Course, but rather, that Cornelius' problems were of genetic origin.
Section 440.17, Florida Statutes (1981), provides that a deputy commissioner may require the appointment by a court of competent jurisdiction of a guardian for any person who is mentally incompetent or a minor. To require the appointment of a guardian is purely within the discretion of the deputy commissioner. Allure Shoe Corp. v. Lymberis, 173 So.2d 702 (Fla. 1965). However, once it has been determined that a claimant is mentally incompetent, to decide his case without any presentation on his behalf either by a guardian or by counsel departs from the essential requirements of law. See Aris v. Big Ten Taxi Corp., 330 So.2d 465 (Fla. 1976). On the facts of the instant case, it was an abuse of discretion to not require the appointment of a guardian under section 440.17. The record in the case at bar clearly reveals that Cornelius did desire to be represented by an attorney but that he was unable to obtain the services of one. The record also revealed that Cornelius eschewed the deputy commissioner's offer of a continuance not out of a lack of desire for an attorney, but because Cornelius desired to get his ordeal over with. Cornelius, a man diagnosed schizophrenic by at least two psychiatrists and a psychologist, and who was declared incompetent by the deputy commissioner on March 27, 1980, was allowed by that same deputy commissioner to call and examine witnesses, present evidence, and argue his case on April 7, 1980.
Infants and incompetents are wards of the court, and courts have the duty and obligation to preserve and protect the ward's interest. Turner v. Andrews, 143 Fla. 88, 196 So. 499 (Fla. 1940). This rule applies to appellate courts as well as trial courts, and in the case of incompetents, reviewing courts will even hear arguments asserted for the first time on appeal. Trethewey v. Trethewey, 115 So.2d 712 (Fla. 2d DCA 1959). Furthermore, a guardian ad litem cannot bind an incompetent by admission or waiver, and the courts must protect the incompetent's interest notwithstanding the failure of a guardian ad litem to do so. Mote v. Morton, 52 Fla. 548, 41 So. 607 (Fla. 1906). This is particularly true in workers' compensation cases where the law is to be liberally construed in favor of the claimant. We therefore hold that the deputy commissioner departed from the essential *570 requirements of law in allowing the incompetent claimant to conduct the claims hearing pro se. See Aris, supra; Bailey's Auto Service v. Mitchell, 85 So.2d 228 (Fla. 1956). Having found Cornelius to be incompetent, the deputy commissioner should have either required the appointment of a guardian by a court of competent jurisdiction as provided by section 440.17, Florida Statutes, or insured that the incompetent claimant was represented by attorney as was his desire.[2]
Accordingly, the final order below is REVERSED and this cause REMANDED for proceedings not inconsistent with this opinion.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.
NOTES
[1] We are unaware of any authority in a deputy commissioner to appoint a guardian or guardian ad litem. Section 440.17, Florida Statutes (1981), provides that a deputy commissioner "may require the appointment [of a guardian] by a court of competent jurisdiction ... ." (emphasis added). Peppard v. Peppard, 198 So.2d 68 (Fla. 3d DCA 1967), states that the appointment of a guardian ad litem by a circuit court needs no specific statutory authority because of the inherent equitable powers of the circuit court. In the case at bar we find it unnecessary to decide whether a deputy commissioner has such power since here the "guardian" took no part in the hearing other than to accede to it taking place. Where the hearing is conducted by the incompetent "ward" it is irrelevant whether the "guardian" is properly appointed.
[2] We do not imply that a deputy commissioner has the authority to appoint counsel for an incompetent claimant.